UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| ARGELIO TORRES-LOPEZ | ) | |
| --- | --- | --- |
| | ) | |
| | ) | |
| v. | ) | No.1:03-cr-163-1/1:09-cv-103 |
| | ) | *Chief Judge Curtis L. Collier* |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

## **MEMORANDUM**

*Pro se* Petitioner Argelio Torres-Lopez ("Petitioner") timely filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 151). Petitioner then filed a motion to supplement his § 2255 motion (Criminal Court File No. 154). Petitioner contends he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and he was denied his right to Due Process. The Government opposes Petitioner's § 2255 motion (Criminal Court File No. 165).

The motions, together with the files and record in this case, conclusively show Petitioner is entitled to no relief under 28 U.S.C. § 2255. For the following reasons, the Court has determined an evidentiary hearing is unnecessary, *see United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993), Petitioner's § 2255 motion will be **DENIED** for lack of merit (Criminal Court File No. 151).

**I.    RELEVANT FACTS AND PROCEDURAL HISTORY**

In July 2003, Petitioner was riding in a pickup truck in Bradley County, Tennessee with Mayke Martinez-Maldonado and a twelve-year-old boy when the truck was pulled over for a traffic infraction. While police were stopping the truck, Petitioner handed the boy three eight balls of methamphetamine. In addition to the methamphetamine, police uncovered two loaded firearms in the cab of the truck behind both the driver and the passenger seats. Police would later connect

Petitioner to a drug distribution conspiracy. Based on information from co-conspirators, police determined Petitioner was distributing over 500 grams of methamphetamine. They also determined Petitioner was deported on or about October 15, 1996, and illegally reentered the United States around ten days later. All of this information was stipulated by the parties in Petitioner's plea agreement.

On October 15, 2003, Petitioner was indicted on seven counts of a fourteen-count second superseding indictment. Count Two charged Petitioner with carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). Count Five charged Petitioner with conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Count Seven charged Petitioner with violating 8 U.S.C. § 1326 by unlawfully entering the United States after being deported. Pursuant to a plea agreement, Petitioner pleaded to Counts Two, Five, and Seven on March 18, 2004. Although he pleaded guilty to Count Seven, the United States later dismissed the charge.

Petitioner's Presentence Investigation Report ("PSR") listed his offense level as a 34, based on individual responsibility for at least 2,948.4 grams of methamphetamine. With the three-level reduction for acceptance of responsibility, Petitioner's offense level was a 31. The PSR also placed Petitioner in criminal history category III based on four criminal history points. The PSR's calculation of the guidelines provided a range of 135 to 168 months. However, because both of the counts for which Petitioner was being sentenced had mandatory minimum sentences, Petitioner's effective range was much higher. The statutory mandatory minimum for conspiracy to distribute methamphetamine is 120 months, and the statutory minimum for violating § 924(c) is a consecutive term of 60 months. Because the § 924(c) violation was statutorily required to be served

consecutively, Petitioner faced an effective range of 195 to 228 months in prison.

At the original December 2004 sentencing, Petitioner objected to both the drug quantity and the criminal history computation in the PSR. The United States concurred with Petitioner as to the computation of the drug quantity, but opposed his objection to the criminal history computation. The Court granted Petitioner's drug quantity motion, and reduced his total offense level to 29, but overruled his objection to the computation of his criminal history category. Accounting for the lowered offense level, Petitioner's guidelines range was 108 to 135 months, which was effectively 120 to 135 months given the ten year minimum sentence for Count Five. After accounting for the consecutive 60 month sentence for violating § 924(c), Petitioner's final effective guidelines range was 180 to 195 months. After hearing from counsel and Petitioner, the Court sentenced Petitioner to 185 months in prison.

Shortly after sentencing, Petitioner filed a notice of appeal. The Sixth Circuit vacated the sentence and remanded for resentencing on February 2, 2006 for reconsideration in light of the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005).[1] At Petitioner's second sentencing, Petitioner argued his criminal history was miscalculated, partly basing his argument on information acquired after his original sentencing, and urged the Court to consider the overestimation of Petitioner's guidelines range in fashioning a new sentence. The Court, however, considered the Sixth Circuit's remand to be a limited one, and concluded its authority on remand was only to reconsider Petitioner's case with the understanding the guidelines were now merely advisory. The Court concluded 185 months was the appropriate sentence considering the § 3553(a)

---

[1] Three days after Petitioner's sentence was vacated by the Sixth Circuit, Petitioner filed a 28 U.S.C. § 2255 motion to vacate his sentence (Criminal Court File No. 131), which the Court denied as premature (Criminal Court File No. 132).

3

factors, and noted it would have sentenced Petitioner to that length of time regardless of the computation of his criminal history category. Petitioner appealed his second sentencing.

On appeal, Petitioner argued the same point he argued before the Court at his resentencing hearing; that is, his criminal history category should have been a II rather than a III. The Sixth Circuit affirmed the Court's sentence. The court of appeals concluded the sentence was procedurally and substantively reasonable regardless of the criminal history computation, and read the Court's sentence as being based not on the guidelines range but on the § 3553(a) factors. *United States v. Torres-Lopez*, 260 F. App'x 845, 847-48 (6th Cir. 2008). The opinion was filed on January 18, 2008. Petitioner timely filed a motion to vacate under 28 U.S.C. § 2255 on April 17, 2009.[2]

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, on the grounds

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir.

---

[2] Section 2255 motions must be filed within one year of the contested judgment becoming final. When a defendant, as is the case here, does not file a petition for writ of certiorari, judgment becomes final when the time for filing the petition expires, or ninety days after the appeals court enters judgment. *United States v. Carbajal-Moreno*, 332 F. App'x 472 (10th Cir. 2009). Ninety days from the entry of the Sixth Circuit's judgment was April 18, 2008. Because Petitioner mailed his motion within one year, on April 17, 2009, his motion was timely. *See Towns v. United States*, 190 F.3d 468 (6th Cir. 1999) (applying the prison mailroom filing rule to motions filed under § 2255).

4

1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

## III. DISCUSSION

Petitioner's primary argument appears to be ineffective assistance of counsel, for which Petitioner cites four separate instances of inadequate representation. Petitioner also argues his Due Process rights were violated when he was sentenced without having read the PSR prepared in his case.

### A. Ineffective Assistance of Counsel

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused

shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be

established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

When, as here, the petitioner alleges ineffective assistance of counsel in a plea proceeding, the movant must show, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994), *cert. denied*, 514 U.S. 1071 (1995) ("[Petitioner] alleged in his petition that he would not have pleaded guilty but would have insisted upon going to trial . . . . However, this bare allegation is not sufficient to establish prejudice."); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986) (merely making a claim that he would have pleaded differently and gone to trial is insufficient); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not

7

sufficient to establish prejudice under *Strickland* ).

Petitioner alleges four grounds on which he claims his counsel was constitutionally defective. The Court will consider each ground in turn.

### 1. Mandatory Minimum Sentences

Petitioner argues counsel did not adequately inform him of the consequences of his guilty plea. Specifically, Petitioner states he was never told he was facing mandatory minimum sentences or that they would run consecutively. Petitioner also contends, somewhat contradicting his initial allegation, counsel told him he would be able to remove one of the charges on appeal. Petitioner contends, but for counsel's failure to inform him of the full extent of possible prison time he would face by pleading guilty, he would have insisted on proceeding to trial. Therefore, Petitioner concludes, he deserves to have the judgment against him vacated because he showed ineffective assistance and prejudice.

Here, Petitioner was made aware at his plea colloquy that he faced a 180 month mandatory minimum sentence. The Court had the government state, "As to the conspiracy count, the confinement would be a minimum mandatory ten years to a maximum of life . . . . As to the carrying-of-the-firearm count, . . . in terms of confinement, at least five years, which must, by law, run consecutive to any sentence imposed on the conspiracy offense" (Criminal Court File No. 163, pp. 12-13). After the sentence was read, the Court specifically asked Petitioner, "[K]nowing these penalties, do you still wish to plead guilty?" Petitioner's response to this question was a simple, "Yes, sir" (*id.*). The Court also informed Petitioner it had the power to impose a "more severe" sentence than called for by the guidelines, which Petitioner informed the Court he understood (*id.* at 13-14).

8

Petitioner alleges his counsel told him to agree with whatever counsel said at sentencing, and so Petitioner attempts to mitigate his open-court declarations by contending they were not intelligent or voluntary. However, the Supreme Court has emphasized the weighty nature of sworn testimony: "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Therefore, the Court will not impeach Petitioner's sworn testimony with "[t]he subsequent presentation of conclusory allegations."

Considering Petitioner's knowledge of the possible offenses, the Court cannot say Petitioner has proved the prejudice prong of the *Strickland* test. That is, if he was aware, as he declared under oath, his offenses carried a "minimum mandatory ten years" followed by "five years, which must, by law, run consecutive" to that sentence, then Petitioner would have pleaded guilty regardless of the degree to which defense counsel explained the application of the sentencing guidelines or neglected to explain the mandatory minimum sentences required by statute. Additionally, even assuming counsel informed Petitioner he would be successful on appeal, that simply further illustrates Petitioner was aware of the sentences he was facing and chose to plead guilty on the chance he would be successful on appeal. As a result, Petitioner's claim regarding mandatory minimum sentences fails.

**2. Section 924(c)**

Petitioner argues his counsel was ineffective in advising him to plead guilty to the § 924(c) charge because it lacked a factual basis.

At the outset, the Court observes Petitioner is explicitly contesting the sufficiency of the

9

evidence for his conviction. Petitioner argues, "[H]e plead [sic] guilty to something that was not a crime factually, and could not have committed the crime based in the indictment of carrying a gun in relation to a drug trafficking crime, and is unsupported by the plea agreement by any factual basis . . . the Petitioner could not have plead [sic] guilty and there was insufficient factual basis that he could have reasonably foreseen that his co-conspirator would carry a firearm." The Court disagrees.

Nevertheless, by pleading guilty Petitioner waived his right to challenge the sufficiency of the evidence. *See United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) ("This Circuit has specifically interpreted Rule 11(a)(2) to bar a defendant's challenge that evidence was insufficient to support a conviction, absent a conditional plea that specified the issue for preservation on appeal."). Moreover, during the plea colloquy, the Court specifically warned Petitioner that, by pleading guilty, he was giving up his "right to require the United States to prove you guilty beyond a reasonable doubt" (Criminal Court File No. 163, p. 4). The Court read each offense and asked Petitioner how he pleaded. This included the § 924(c) offense, which contains the phrase "defendant . . . did knowingly and intentionally carry a firearm." Petitioner pleaded guilty (*id.* at p. 10). *See United States v. Turner*, 272 F.3d 380, 389-90 (6th Cir. 2001) (unconditional guilty plea waived challenge to sufficiency of the evidence claim). In addition to ensuring Petitioner understood the elements of the crime to which he was pleading guilty, the Court also questioned him to confirm he understood and agreed with the government's summary of his offense conduct, which included the presence of firearms in the vehicle. Therefore, the record contains sufficient evidence to support Petitioner's plea.

With regard to counsel's advice that Petitioner plead to the § 924(c) charge, Petitioner again faces the hurdle of showing he would have otherwise pleaded not guilty. To make this showing,

10

Petitioner claims he believed he was pleading to the presence of the gun in the vehicle, but not that he knew the gun was present, and subsequently sought to withdraw his guilty plea when he discovered it carried a five year mandatory minimum sentence, which would run consecutively to his sentence for distribution. These claims, however, are not supported by the record. At his plea hearing, as noted above, Petitioner pleaded guilty to the offense after it was read aloud to him, and it included the phrase "knowingly and intentionally carry[ing] a firearm." Subsequently the Court had the following exchange with Petitioner, which the Court referenced above.

> THE COURT: For the next count the essential elements are: (1) that the defendant committed the drug-trafficking crime charged in the indictment and, during and in the relation to the commission of that drug-trafficking crime, knowingly carried a firearm. Do you understand what it is you are pleading guilty to?
>
> PETITIONER: Yes, your honor.
>
> THE COURT: Mr. Laymon, please advise defendant of the maximum punishment he faces. And if there is any mandatory minimum penalty, please advise him of that.
>
> MR. LAYMON: Yes, Judge. As to the conspiracy count, the confinement would be a minimum mandatory 10 years to a maximum of life, a fine of up to $4 million, and at least 5 years' supervised release, and a 100-dollar special assessment. As to the carrying-of-the-firearm count, at least – in terms of confinement, at least 5 years, which must, by law, run consecutive to any sentence imposed on the conspiracy offense.
>
> . . .
>
> THE COURT: Knowing these penalties, do you still wish to plead guilty?
>
> PETITIONER: Yes, sir.

(Criminal Court File No. 163, pp. 12-13). The Court also referred Petitioner to the factual basis in the plea agreement. The only objection to the factual basis raised by Petitioner was his contention the firearms, although present, were more than "inches" from him (*id.* at pp. 15-16). According to Petitioner's own testimony in open court prior to the acceptance of his plea, Petitioner was aware

11

the charge to which he was pleading required he knowingly and intentionally carried a firearm and the offense carried a five-year mandatory sentence.

Petitioner also places significant emphasis on a sentencing continuance in his case supposedly resulting from Petitioner's desire to withdraw his guilty plea as to the § 924(c) charge. However, at sentencing, and after Petitioner claims he sought to withdraw his plea, the Court specifically inquired to both Petitioner and his counsel whether he was withdrawing his plea as to the § 924(c) count. The Court asked, "[Petitioner] does not want the Court to take any action at all with respect to the previous plea of guilty on [the § 924(c)] charge?" Without specific prompting, Petitioner responded definitively, "No" (Criminal Court File No. 129, p. 18).

As previously discussed, "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Because Petitioner here was advised of the elements of the offense, agreed to the contents of the factual basis, and when given a final opportunity to withdraw his plea at sentencing–after Petitioner admits he was aware of the sentence and requirements of the offense–Petitioner did not withdraw his plea, the Court cannot find Petitioner has proven the prejudice prong of *Strickland*. From the record, the Court finds Petitioner would have pleaded guilty to the offense regardless of his counsel's alleged ineffectiveness.

### 3. Presentence Investigation Report

Petitioner claims his counsel was ineffective when he allowed him to proceed to sentencing without reading the PSR. In support of this claim, Petitioner asserts the Court never asked him if he read or discussed the PSR with counsel, and claims if counsel had shown him the PSR he would

not have pleaded guilty. Petitioner cites *United States v. Stevens*, 851 F.2d 140 (6th Cir. 1988) in support of his claim the Court erred when it failed to ask Petitioner or counsel whether they had the opportunity to read and discuss the PSR. Petitioner provides a copy of the sentencing hearing transcript and notes the absence of any questions or statements showing Petitioner had read and understood the PSR.

However, Petitioner conveniently omitted two pages from the copy of the sentencing hearing transcript he provided the Court with his brief. Importantly, the two omitted pages include the following colloquy.

> THE COURT: . . . Mr. Torres Lopez, have you received a copy of the presentence report prepared on you?
>
> PETITIONER: Yes, Your Honor.
>
> THE COURT: Did you have a chance to read it?
>
> PETITIONER: Yes, Your Honor.
>
> THE COURT: Did you have sufficient time to discuss the report with your attorney?
>
> PETITIONER: Yes, Your Honor.
>
> THE COURT: Mr. Lasley, did you receive a copy of the presentence report prepared on Mr. Torres Lopez?
>
> MR. LASLEY: Yes, Your Honor.
>
> THE COURT: Did you have sufficient time to review the report with him?
>
> MR. LASLEY: Yes, Your Honor.

As the Court has had cause to note repeatedly in response to Petitioner's motion, sworn statement in open court carries a presumption of verity and will not be impeached by subsequent unsupported allegations. *Blackledge*, 431 U.S. at 74. Further, although Petitioner claims he was not allowed to

read the PSR, he does admit to being counseled regarding the guidelines ranges. As Petitioner admits, counsel correctly informed him his guidelines range would be 29 and showed him the guidelines chart. Aside from the mandatory minimums, Petitioner admits he at least knew the contents of the PSR relevant to his sentence, which is all that is currently in contention. Because the Court has already discussed the mandatory minimums issue, Petitioner's claim fails on this count because he swore in open court he read and discussed his PSR with counsel prior to sentencing, and admits in his motion to being aware of the relevant guidelines range.

### 4. Failure to Present Mitigating § 3553 Evidence

Petitioner argues counsel was ineffective because he failed to perform an investigation into, or present any, § 3553 evidence. Petitioner provides affidavits from his son, his daughter, and his ex-wife, each claiming to have been willing to testify in support of Petitioner at sentencing. In his own affidavit, Petitioner contends, "Prior to sentencing I told [my attorney] that I had grown children that would testify for me and that my ex-wife and wife would testify for me about my job responsibilities, that I sent money to my father in Mexico and that I had grown children that would testify on my behalf as to their need for my support."

Petitioner cites *Beuke v. Houk*, 537 F.3d 618 (6th Cir. 2008) and *Dickerson v. Bagley*, 453 F.3d 690 (6th Cir. 2006) to contend an attorney's failure to perform a mitigation investigation is deficient performance. However, those cases refer to attorney performance in mitigation for a capital case. *Beuke*, 537 F.3d at 643 (citing three death penalty cases *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Coleman v. Mitchell*, 244 F.3d 533 (6th Cir. 2001)); *Dickerson*, 453 F.3d at 693 ("[T]he Supreme Court, in the last three years, in two different death penalty ineffective assistance of counsel cases, has made it clear and come down hard on the

14

point that a thorough and complete mitigation investigation is absolutely necessary in capital cases.")

Regardless, the Court believes Petitioner still fails to show prejudice in this claim because many of the relevant personal characteristics were known to the Court through the PSR and considered in crafting the sentence (PSR, ¶¶ 52-55) (noting Petitioner's then seventy-nine year old father in Mexico, his multiple marriages, and his five children); (PSR, ¶ 59-61) (discussing Petitioner's skills as a carpenter). In fact, because the sentencing in this case happened concurrently with the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Court had occasion to consider the § 3553 factors twice. In Petitioner's resentencing hearing, the Court explained,

> The Court believes that [a 185 month] sentence would have been well within the statutory maximum, which for Mr. Torres Lopez would be life imprisonment. The Court believes that such a sentence would have been no more severe but severe enough to provide adequate deterrence to others who might be interested in committing this type of offense, adequate to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The Court, in making this decision, has considered the defendant's unique personal background and characteristics. The Court has also considered the nature of the offense.

(Criminal Court File No. 145, pp. 15-16). Petitioner has failed to show prejudice on this point. The Court, having considered many of the personal factors identified by Petitioner in his motion, chose the sentence carefully and concluded, after consideration of all the § 3553 factors, 185 months was the appropriate sentence. Petitioner's argument on this point must fail.

In sum, because Petitioner swore on the record to understanding the sentence he was facing, he was advised of the elements of the § 924(c) charge to which he pleaded, he swore he had read the PSR, and the Court considered the personal information Petitioner argues counsel should have

15

presented, Petitioner has failed to establish the prejudice prong in *Strickland*. Accordingly, the Court **DENIES** Petitioner's § 2255 motion to vacate on the basis of ineffective assistance of counsel.

**B. Due Process**

Petitioner also claims his right to Due Process was violated when he was sentenced without having read the PSR prepared in his case. However, as discussed above, Petitioner admitted to reading the PSR in open court at his sentencing hearing. For the reasons the Court already explained, the Court concludes Petitioner did in fact read the PSR and finds no violation of his right to Due Process. Accordingly, the Court **DENIES** Petitioner's § 2255 motion to vacate on the basis of a Due Process violation.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's sentence was not imposed in violation of the Constitution or laws of the United States or is otherwise subject to collateral attack, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will therefore be **DENIED** (Criminal Court File No. 151).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**